# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff*, | ) |
| v | ) Case No.: 19-60026-EFM |
| TYLER LEACH, | ) |
| *Defendant*. | ) |

## **MEMORANDUM AND ORDER**

Defendant Tyler Leach moves the Court for early termination of his term of supervised release (Doc. 2). The United States Government has not filed a response to this motion, and the time for doing so has expired. Accordingly, this matter is ripe for the Court's determination.

Defendant was convicted in the Western District of Missouri of Use of Interstate Facility to Attempt to Entice a Minor to Engage in Sexual Activity. His final sentence[1] imposed was 120 months, to be followed by five years of supervised release. Leach reports to the Court that he completed his federal sentence on January 3, 2014, and then was transferred to the custody of the state of Kansas for sentencing on his conviction of Aggravated Criminal Sodomy of a Minor. He further reports that he was released from custody on that sentence on October 11, 2018, at which time he began supervision both on federal supervised release and on Kansas parole. On July 10, 2019, this Court accepted transfer of jurisdiction for his federal supervised release. His term of federal supervised release will terminate on October 9, 2023. He reports that his Kansas parole

---

[1] The initial sentence imposed on Defendant Leach was reversed and remanded for resentencing.

will terminate in October of 2021. He has served two years and nine months of his five year term of supervised release.

18 U.S.C. § 3583(e)(1) authorizes the Court to terminate a defendant's term of supervised release at any time after one year of supervision if the Court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." In deciding whether to grant early termination of a term of supervised release, the Court is directed to consider the factors set forth in 18 U.S.C. § 3553(a).[2] Whether to grant a motion for early termination of supervised release rests with the discretion of the Court.[3] The Judicial Conference guidance on requests for early termination where a a defendant has served 18 or more months of supervision (as has Leach) is that "there is a presumption in favor of recommending early termination if the defendant is not a career drug offender or career criminal, has not committed a sex offense or engaged in terrorism, presents not identified risk of harm to the public or victim, has no court-reported violations over a 12-month period, demonstrates the ability to lawfully self-manage beyond the term of supervision, is in substantial compliance with all conditions of supervision, and is engaged in appropriate prosocial activities is receiving sufficient prosocial support to remain lawful well beyond the period of supervision.[4]

Leach has filed his motion for early termination *pro se*, but it is well stated and researched. He argues that early termination is merited by the interests of justice. Specifically, he notes that his convictions-federal and state-were for soliciting sexual activity from minor females who were

---

[2] *United States v. Warren*, 650 F. App'x 614, 615 (10th Cir. 2016).

[3] *Rhodes v. Judisak*, 676 F.3d 931, 933 (10th Cir. 2011).

[4] Guide to Judiciary Policy, Vol. 8, Part E, § 360.20(c) (July 2, 2018).

too young to consent and who were victims of manipulation. He notes that his years in prison[5] involved "soul searching" and participation in the Sexual Offender Treatment Program (SOTP), as well as substance abuse treatment. The United States Probation Office (USPO) confirms that he completed the SOTP as a low risk discharge (he scored low/moderate 3 on the risk scale). Leach argues that he "cannot and will not justify myself in regards to the nature and circumstances of my offense" but that his character has changed since then.

Specifically, he notes that the faith-based transitional house in which he resided in his transition from prison to release has hired him as a house leader, and that he has managed men in that house for a year and a half. Eventually, he became the city director of three transitional houses. While in prison, he certified in HVAC, drafting, welding and restaurant management to ensure that he would remain employed when out of prison. The USPO reports that he has been employed with Koch Industries for the duration of his term of supervised release. Leach reports that his position there is in customized metal fabrication work, as a result of which he has a stable home with health insurance.

Leach disputes the conventional wisdom that sex offenders re-offend at a high rate; citing academic and United States Department of Justice studies to the contrary (they collectively report, in general, an under 5 per cent rate of recidivism). Regarding his own status, he argues that he is turning forty this year; noting that risk of recidivism falls with age. He asserts that, due to his treatment programs he is no longer the person who committed those offenses, as shown by having passed several polygraph examinations. The USPO confirms this, further noting that monitoring of his cell phone has shown no issues, that he has been drug free and reported as required, and that

---

[5] He was arrested and placed in federal custody on March 11, 2005. Upon completion of his federal sentence he was released to the custody of the State of Kansas for sentencing. He was released from that custody on October 11, 2018. Accordingly, he served over 13 and ½ years of incarceration.

he self-governs and he has performed very well since his release with only one incident of noncompliance early in his supervision which was quickly corrected.[6]

While noting that early termination of supervised release for sexual offenders was "nearly unheard of 15 years ago," Leach argues that such offenders should be treated the same as other offenders in regards to early termination; that it is appropriate when a defendant demonstrates the ability to lawfully self-mange. He notes that this Court has previously acknowledged that "the question is not whether the defendant deserves further punishment, but rather whether continuing supervision is necessary to assist him with rehabilitation and reintegration in the community."[7]

Considering the 18 U.S.C. § 3553(a) factors, the Court notes that the nature and circumstances of his offenses (including his state offense) are serious; soliciting illicit sexual contact with minor females (ages 13 and 14). The history and characteristics of the defendant suggest that he has matured (both in chronological age and in rehabilitative therapy and training) past his youthful offenses (he was 23 years old when his federal and state offenses occurred; he is now 39). The Court considers that the need for the criminal justice system sentence and supervision to reflect the seriousness of the offense, promote respect for the law, and provide just punishment was satisfied, noting that when he was released from federal and state custody in 2018, he has spent over 1/3 of his entire life incarcerated for these offenses (approximately 13 ½ years of incarceration, with Leach being one month shy of his 37th birthday at the tine of his release). While no guarantees exist regarding protecting the public from further crimes of a defendant (or

---

[6] He was watching Netflix show via a gaming system shortly after his release. The USPO reports that this was a violation as the gaming system was not monitored, but the movie he was watching was appropriate per SOTP policy. In other words, the movie was fine, but the method of watching it was not.

[7] *United States v. Doerr*, No. 14-50004, slip op. at 4 (D. Kan., February 19, 2021), (citing *United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.")).

anyone), the Court finds that the defendant's therapy, training and conduct appear sufficient to meet these concerns. And the Court similarly finds that his period of incarceration and supervision to date have provided him with adequate educational and vocational training and other correctional treatment in the most effective manner.

Considering the criteria the Court is to consider pursuant to the factors set forth in the Guide to Judiciary Policy, the Court notes Leach is not a career drug offender or career criminal, not has he engaged in terrorism. He did, however, commit a sex offense (the offense of conviction, and a similar state offense just prior to his federal one), but has committed no such offenses since then. While no one is free from risk, the Court cannot say that Leach presents an *identified* (emphasis added) risk of further harm to the public or victim. He has had no reported violations over the past 12 months; indeed, other than the technical violation noted in footnote 6, no violations of any type during his term of supervision to date. As noted by his USPO officer, he self-governs, and his performance to date gives assurances that he can continue to lawfully self-manage beyond his period of supervision. He is in substantial compliance with all of his conditions of supervised release. It appears that his employment and leadership with the transitional houses he himself benefited from upon his release are appropriate prosocial activities. Moreover, his motion for early termination further identifies his prosocial support, noting his friends from the transitional house as well as an "alumni" group of former inmates who are supportive of each other, and his "wonderful, supportive family" and his new girlfriend.

As Leach admits, his sex offender status denies him the presumption of early termination under the Guide to Judiciary Policy standards. And the Court shares the general reluctance to release prior sex offenders from supervision early. But Leach presents a remarkable and unique

case supporting his early termination. His USPO officer likewise informs the Court that Leach's performance on supervision is a poster child for how well a sex offender can do.

Therefore, in consideration of these factors, the Court finds and concludes that Leach's motion for early termination of his term of supervised release should be granted.

IT IS THEREFORE ORDERED that Defendant Tyler Leach's Motion for Early Termination of Supervised Release (Doc. 2) is granted, and that his term of supervised release is accordingly terminated effective immediately.

IT IS SO ORDERED.

Dated this 8th day of July, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE